UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTOINE DAVIS,

                Petitioner,

    -vs-

BRANDON T. SMITH,

                Respondent.

_____

**DECISION AND ORDER**
**No. 12-CV-0096MAT**

## I.   Introduction

*Pro se* Petitioner Antoine Davis ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered January 7, 2010, in New York State, County Court, Erie County, convicting him, upon a non-jury verdict,[1] of Attempted Assault in the First Degree (N.Y. Penal Law ("Penal Law") §§ 100.00, 120.10[1]), Endangering the Welfare of a Child (Penal Law § 260.10[1]), Menacing in the Second Degree (Penal Law § 120.14[1]), and Aggravated Harassment in the Second Degree (Penal Law § 240.30[1]).

## II.  Factual Background and Procedural History

Petitioner was charged in a five-count indictment with Attempted Assault in the First Degree (Penal Law §§ 100.00,

---

[1]

    On May 21, 2009, Petitioner waived his right to a jury trial, and proceeded to a non-jury trial before the Honorable Thomas P. Franczyk.  Jury Trial Waiver Mins. of 05/21/09 at 2-4.

120.10[1]), Attempted Assault in the Second Degree (Penal Law
§§ 100.00, 120.05[2]), Endangering the Welfare of a Child (Penal
Law § 260.10[1]), Menacing in the Second Degree (Penal Law
§ 120.14[1]), and Aggravated Harassment in the Second Degree (Penal
Law § 240.30[1]).  The charges arose from an incident that occurred
on July 7, 2008 in the City of Buffalo, New York, wherein
Petitioner squirted lighter fluid on Pamela Ervin ("Ervin"), and
threatened to set her aflame.  See Erie County Ind. No. 01870-2008,
dated 09/10/08 at Resp't Ex. A.

In July 2008, Petitioner was living with then-girlfriend Ervin
at her apartment at 199 Hastings, but they were in the process of
breaking up.  Trial Trans. [T.T.] 9-13.  On the morning of July 7,
2008, Petitioner and Ervin had an argument over the possibility of
another woman in Petitioner's life, and Ervin told Petitioner
"[she] wanted him to get out."  T.T. 13.  Later that same day while
Ervin was at her uncle's home, she received numerous text messages
on her cell phone from Petitioner inquiring about her whereabouts.
T.T. 12-13.  When Ervin refused to answer her phone, Petitioner's
text messages began to change, indicating that "[he] was going to
fuck [Ervin] up."  T.T. 12.  Ervin left her uncle's home and picked
up her friend, Beth Moore ("Moore"), and Moore's one-year child,
Shardon.  T.T. 13.  Thereafter, Ervin, Moore, and Shardon returned
to Ervin's apartment.  T.T. 14.

Back at her apartment, Ervin received a call from Petitioner and an argument ensued over Petitioner's personal belongings. Petitioner also indicated to Ervin on the phone that he wanted returned to him a bracelet he had bought for her.   T.T. 14. Petitioner hung up the phone and eventually called back and told Ervin to open her door.   T.T. 15.   Petitioner stated to Ervin that "[he] [would] bust the window out if [Ervin] didn't open the door." T.T. 15.   After some reluctance, Ervin opened the door to let Petitioner inside to collect his belongings.   T.T. 15.

Petitioner entered the apartment and walked into the kitchen where Moore and Shadron were sitting at the kitchen table. T.T. 16.   Ervin turned around to the counter to take the bracelet off.   When she turned around, Petitioner had a white plastic container of lighter fluid and began squirting the lighter fluid on Ervin from her neck down to her feet.   T.T. 18-20, 37, 68-69. Ervin testified that she recognized the white plastic container as lighter fluid and smelled the odor of lighter fluid.   T.T. 19, 21. After Petitioner stopped squirting Ervin with the lighter fluid, he stated to her, "bitch, I'm going to burn you" and then patted his pockets.   T.T. 21, 22, 69-70, 75.   Ervin testified that she felt "like [Petitioner] was gonna get a lighter out of [his] [pocket] and set [her] on fire . . . ." T.T. 22.   Ervin testified further that she knew Petitioner to be a smoker and to carry matches or a lighter.   T.T. 22.   Moore then got up from the kitchen table,

carrying Shadron, and she tried to run.  T.T. 22, 70.  Petitioner grabbed Moore's shirt and stated, "bitch, you ain't going nowhere." T.T. 22, 70, 75.   While Petitioner held Moore's shirt, Ervin attempted to run.  Petitioner let go of Moore and grabbed Ervin's shirt, ripping it.  Ervin broke free from Petitioner's grasp and ran outside to a neighbor's house and called the police.  Shortly thereafter, Petitioner exited Ervin's apartment and fled the scene. T.T. 24-25.

Later that same evening and into the following day, Ervin received numerous phone calls and text messages from Petitioner, in which Petitioner called Ervin a "bitch," indicated that he was "going to fuck [her] up," and that he was "going to get [her]." T.T. 27-29.  Ervin testified that she was frightened for her safety at this time.  T.T. 28.

On July 23, 2009, Petitioner was found guilty of all counts of the indictment, except count two (attempted assault in the second degree), which the trial court dismissed as a lesser-included offense.  Verdict Mins. of 07/23/09 at 2.

After the trial court rendered its verdict, Petitioner, through counsel, filed a N.Y. Crim. Proc. Law ("CPL") § 330.30 motion to set aside the verdict on the basis that he was not informed during the trial that his trial attorney had previously represented prosecution witness Moore, creating the potential for a conflict of interest.  After oral arguments, the court denied the

motion.  See Sentencing Mins. [S.M.] of 01/07/10 at 2-6;  Decision and Order of the Erie County Court, dated 03/02/10 at Resp't Ex. A.

Petitioner was subsequently sentenced, as second violent felony offender, to a determinate term of seven years imprisonment plus five years of post-release supervision for attempted assault in the first degree, and definite terms of one year imprisonment for each of the remaining convictions.  All of the sentences were set to run concurrently.  S.M. 14-16.

B.  **Direct Appeal**

Represented by counsel, Petitioner appealed his judgment of conviction on the grounds that the evidence was legally insufficient to support his conviction of attempted assault in the first degree and that the verdict was against the weight of the evidence; and that he was denied effective assistance of counsel because of his counsel's conflict of interest.  See Pet'r Br. on Appeal at Resp't Ex. B.  The Appellate Division, Fourth Department determined that Petitioner's claims were meritless and unanimously affirmed the judgment of conviction on April 29, 2011.  People v. Davis, 83 A.D.3d 1492 (4th Dep't 2011) (Resp't Ex. B); lv. denied, 17 N.Y.3d 815 (Resp't Ex. C).  Petitioner sought reconsideration of his request for leave to appeal, which was denied on October 26, 2011.  See Resp't Ex. D.

### C.    The Federal Habeas Petition

This habeas corpus petition followed, wherein Petitioner seeks habeas relief on the same grounds upon which he appealed his judgment of conviction.  See Pet. ¶ 22A-B, Attach. (Dkt. No. 1). Respondent has filed a Response (Dkt. No. 6) and Memorandum in Support (Dkt. No. 7) in opposition to the habeas petition.

For the reasons that follow, Petitioner's request for habeas relief is denied and the petition is dismissed.

## III. The Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ."  28 U.S.C. § 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999);  accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995).  "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).  Petitioner's claims, which were raised in the state courts, are exhausted and properly before this Court.

## IV.  The AEDPA Standard of Review

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the

Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1)-(2).   Because the Appellate Division adjudicated both of Petitioner's claims on the merits, the AEDPA standard of review applies.   Under that standard, Petitioner's claims are meritless.

## IV.   Analysis of the Petition

### 1.   Legal Sufficiency & Weight of the Evidence (Ground One)

Petitioner claims, as he did on direct appeal, that the evidence was legally insufficient to support his conviction for attempted assault in the first degree, and that the verdict was against the weight of the evidence.   As discussed below, both of these claims are meritless and provide no basis for habeas relief.

### (A)   Legal Sufficiency of the Evidence

Petitioner argues that the evidence was legally insufficient to support his conviction for attempted assault in the first degree because the proof did not establish that: he went beyond "mere preparation" for the attempted offense;  and that he had any intent to cause serious physical injury to Ervin without an ignition source to light the lighter fluid.   See Pet. ¶ 22A, Attach.   The

-7-

Appellate Division denied this claim on the merits. <u>Davis</u>, 83 A.D.3d at 1492.  The state court's adjudication of this claim did not contravene or unreasonably apply clearly established Supreme Court law.

A sufficiency of the evidence claim implicates the due process clause of the Fourteenth Amendment, which protects a defendant against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 315 (1979).  In assessing the sufficiency of the evidence in the context of a petition for writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319.  The essential elements of the crime are determined by "explicit reference to the substantive elements of the criminal offence as defined by state law."  <u>Id.</u> at 324, n.16.  The court must defer to the jury's "assessments of the weight of the evidence or the credibility of witnesses." <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir. 1996).  It is clear, therefore, that a petitioner challenging the sufficiency of the evidence bears "a heavy burden." <u>Knapp v. Leonardo</u>, 46 F.3d 170, 178 (2d Cir.), <u>cert. denied</u>, 515 U.S. 1136 (1995).

Pursuant to New York Penal Law, a person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime. Penal Law § 110.00. The conduct must come "very near" or "dangerously near" the completion of the offense, although one need not have "engaged in the last proximate act necessary to accomplish the intended crime." People v. Mahboubian, 74 N.Y.2d 174, 190 (1989). A person is guilty of assault in the first degree when, with intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument. Penal Law § 120.10[1].

In the instant case, a rational trier of fact could conclude that the essential elements of attempted assault in the first degree had been proven beyond a reasonable doubt. The evidence at trial established that: Petitioner was angry at Ervin because she terminated their relationship;  that Ervin received threatening text messages from Petitioner on the day of the incident because she would not answer her cell phone; that Petitioner came to Ervin's apartment and requested that she let him in; that, once inside, Petitioner squirted lighter fluid on Ervin from her neck to her feet; that, after Petitioner stopped squirting Ervin with the lighter fluid, he stated, "bitch, I'm going to burn you"; that Petitioner, who Ervin knew to be a smoker and to carry a lighter or matches, then patted his pockets; and that Petitioner subsequently

grabbed Ervin's shirt, ripping it, when she attempted to run away. T.T. 21-23.

With respect to Petitioner's specific contention that the proof did not establish that Petitioner went beyond "mere preparation" for the attempted offense and that he did not intend to cause serious physical injury to Ervin because he did not have an ignition source to light the lighter fluid, that contention is meritless.  Here, the requisite intent could be inferred from Petitioner's conduct of obtaining a flammable liquid, squirting Ervin with said flammable liquid from her neck down to her feet, and explicitly stating to her that he was "going to burn [her]." T.T. 21.  That Petitioner failed to ignite the lighter fluid that he squirted on Ervin and/or even possessed the capability of doing so is of no moment insofar as his actions brought him within "dangerous proximity" to the criminal end to be attained, i.e., burning Ervin.  See Mahboubian, 74 N.Y.2d at 195 ("The standard for determining whether a particular act rose to the level of an attempt is well settled.  The act need not be the final one towards the completion of the offense but it must carry the project forward within dangerous proximity to the criminal end to be attained.  The requirement of 'dangerous proximity' means that the act or acts must come or advance very near to the accomplishment of the intended crime.") (internal citations and quotations omitted) (alteration in original); see also People v. Adams, 222 A.D.2d 1124

(4th Dep't 1995) (finding evidence of attempted arson legally sufficient where proof established that defendant splashed gasoline onto house of estranged girlfriend, stated that occupants of house were "all supposed to burn," two lighters were found on defendant, and earlier that night defendant had been at the house of estranged girlfriend, smashing windows and threatening to kill her); <u>People v. Johnson</u>, 186 A.D.2d 363 (finding evidence of second degree attempted arson and first degree reckless endangerment legally sufficient where proof established that defendant, disgruntled over being evicted, doused halls and stairways of apartment building with gasoline and then left when tenants came out and confronted her).

Accordingly, the state court's denial of Petitioner's claim was not contrary to, or an unreasonable application of, the <u>Jackson</u> standard. Petitioner has not met the burden of showing that no rational trier of fact could have found him guilty of attempted assault in the first degree beyond a reasonable doubt. Petitioner's legal sufficiency claim is therefore denied.

**(B)  Weight of the Evidence**

Petitioner claims that the verdict finding him guilty of attempted assault in the first degree was against the weight of the evidence.  <u>See</u> Pet. ¶ 22A, Attach.[2]  The Appellate Division denied

---

[2]

In his petition, Petitioner does not specifically allege that the verdict was against the weight of the evidence.  <u>See</u> Pet. ¶ 22A, Attach.  However, he appears to be raising the same claim he raised on direct appeal, in which he

this claim on the merits.  Davis, 83 A.D.3d at 1492.  This claim, which implicates only state law, is not cognizable by this Court on federal habeas review.

A weight of the evidence claim is "an error of state law, for which habeas review is not available."  Douglas v. Portuondo, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002);  Correa v. Duncan, 172 F.Supp.2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15[5]");  see also Maldonado, 86 F.3d at 35 ("assessments of the weight of the evidence . . . are for the [trier of fact] and not grounds for reversal on appeal").  Thus, Petitioner's weight of the evidence claim is denied for failure to state a cognizable constitutional question.

## 2. Ineffective Assistance of Counsel - Conflict of Interest (Ground Two)

Petitioner claims, as he did on direct appeal, that he was deprived of the effective assistance of counsel because his trial attorney operated under a conflict of interest.  Specifically, he claims that the trial court failed to conduct a sufficient inquiry and obtain a valid waiver once it became aware that defense counsel had previously represented prosecution witness Moore.  See Pet. ¶

---

alleged that the evidence was legally insufficient to support his conviction of attempted assault in the first degree, or, alternatively, that the verdict was against the weight of the evidence with respect to the first-degree attempted assault count.  See Pet'r Br. on Appeal, Point I at Resp't Ex. B.  The Court liberally construes Petitioner's *pro se* pleadings as raising a weight of the evidence claim.

22B, Attach.  For the reasons discussed below, this claim does not warrant habeas relief.

The Sixth Amendment guarantees the right to representation free from conflicts of interest.  See Wood v. Georgia, 450 U.S. 261, 270 (1981) (citing Cuyler v. Sullivan, 446 U.S. 335 (1980); Holloway v. Arkansas, 435 U.S. 475 (1978)); United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994) (citation omitted).  This right is denied where the attorney has a potential conflict that resulted in prejudice to the defendant, or an actual conflict that adversely affected the attorney's performance.  Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993).  "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'"  Id. at 307 (quoting Cuyler, 446 U.S. at 356 n.3).  Thus, even if an actual conflict is demonstrated, the minimum showing of adverse effect required to undermine a conviction is a showing that "some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."  United States v. Schwarz, 283 F.3d 76, 92 (2d Cir. 2002).  As for the duty of the trial judge, "[u]nless the trial court knows or reasonably should have known that a particular

-13-

conflict exists, the court need not initiate an inquiry." <u>Cuyler</u>, 446 U.S. at 347.

Here, Petitioner appears to alleges that there was a potential conflict of interest with his attorney because his attorney had previously represented prosecution witness Moore. <u>See</u> Pet. at ¶ 22B and Attach. As the Court understands his pleadings, Petitioner faults the trial court for failing to conduct a sufficient inquiry into whether Petitioner was aware of the risks associated with his attorney's prior representation of Moore and whether Petitioner wished to proceed with his attorney despite the conflict. This claim is meritless. The record reflects that, prior to the prosecution's direct examination of Moore, counsel alerted the trial court that he had represented Moore on various criminal matters approximately five to eight years ago. T.T. 57. The trial court promptly conducted an inquiry into the matter via a bench conference, on the record, with both attorneys and Moore. The trial court asked defense counsel if he intended to cross-examine Moore about her prior convictions, to which defense counsel responded in the affirmative. T.T. 57. The trial court then asked defense counsel if it was his intention to cross-examine Moore about matters that he knew of only by virtue of the attorney-client relationship. In response, defense counsel stated, "that's where it becomes problematic, because my obligation to Mr. Davis is to zealously represent him and defend him to the best of my ability,

just as it was to [Moore] when I was her attorney and she was my client." T.T. 60.  The trial court then asked Moore, "do you have any objection if [Petitioner's defense counsel] were to ask you about matter discussed between the two of you at the time when he represented you in criminal matters?" T.T. 60.  Moore responded in the negative.  The prosecutor then commenced direct examination of Moore, which was followed by defense counsel's cross-examination. T.T. 57-76.

Indeed, a defense attorney's prior representation of a testifying government witness creates the potential for a conflict of interest because the attorney's duties of loyalty and confidentiality to his clients persist even after termination of the representation.  See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); see also United States v. Leslie, 103 F.3d 1093, 1098-99 (2d Cir. 1997); United States v. Lussier, 71 F.3d 456, 462 (2d Cir. 1995).  The Second Circuit has acknowledged that "[w]hen a defense attorney cross-examines a former client who is a witness against the defendant, a conflict of interest may exist." Lussier, 71 F.3d at 462.  Three potential areas of conflict may arise: (1) "the attorney's pecuniary interest in furthering his business relationship with the government witness may impair his ability to cross-examine the witness zealously"; (2) "the attorney may misuse confidential information obtained from the [witness], or may fail to fully cross-examine for

fear of misusing confidential information"; or (3) "the attorney may be required to testify about material aspects of the witness' testimony, or otherwise place his own credibility at issue in cross-examining the witness or in attacking the witness' testimony in summation."  Anwar v. United States, 648 F. Supp. 820, 826-27 (N.D.N.Y. 1986) (citations and quotations omitted), aff'd, 823 F.2d 544 (2d Cir. 1987).

However, where as here, the former client waives the attorney-client privilege on cross-examination, the risk of a conflict is "significantly diminished," and at worst, results only in a potential conflict of interest. Lussier, 71 F.3d at 461-62 (stating that conflict was at worst potential where former client, who was a witness against the defendant, waived his attorney-client privilege as to his prior communications with former counsel); see also United States v. Thomas, Nos. 98-1051, 98-1052, 98-1116, 2000 U.S. App. LEXIS 2224, 2000 WL 236481, at *3 (2d Cir. Feb. 14, 2000) (slip opinion) (finding no actual or potential conflict where defense counsel previously represented at least three government witnesses in unrelated cases and the witnesses had waived their attorney-client privileges with defense counsel for cross-examination purposes); Leslie, 103 F.3d at 1098-99 (finding no actual or potential conflict where defense counsel previously represented client's co-defendant in an unrelated investigation but co-defendant waived attorney-client privilege on cross-examination,

and stating that if a conflict was assumed, it "could only be regarded as potential"); cf. United States v. Pizzonia, 415 F. Supp. 2d 168, 178-79 (E.D.N.Y. 2006) ("Limited representation of a government witness unrelated to representation of the defendant is not likely to present a disabling conflict.") (citing United States v. Paone, 782 F.2d 386, 393 (2d Cir.1986)).  By consenting to cross-examination, Moore waived any attorney-client privilege that could have hampered defense counsel's cross-examination.  Upon receiving Moore's consent, defense counsel was free to conduct an uninhibited inquiry of Moore, and indeed did so.  Defense counsel appears to have faced no conflict at all upon receiving Moore's consent and, if anything, faced only a potential conflict.  See Lussier, 71 F.3d at 461-62.

To the extent a potential conflict existed, Petitioner nonetheless fails to establish that he was prejudiced by it. Cuyler holds that "the mere possibility of conflict is insufficient to impugn a criminal conviction."  446 U.S. at 350.  Thus, when a petitioner alleges that a conflict is potential, he must show that he suffered prejudice as a result.  Winkler, 7 F.3d at 307.  This he has not and cannot do.  The record reflects that defense counsel conducted a pointed and thorough cross-examination of Moore, and his ability to do so was not in any way hampered by a reluctance to attack Moore's credibility.  See, e.g., United States v. Cunningham, 672 F.2d 1064, 1068 (2d Cir. 1982).  A review of the

record shows that defense counsel specifically questioned Moore on a prior driving while intoxicated conviction and elicited an admission from her that she was a "threat to [her]self and others" while on the road.  T.T. 73.  Further, while cross-examining Moore about a prior conviction for attempted petit larceny, defense counsel impeached her credibility by gaining a concession that she placed her interests above society's interests.   T.T.  73. Additionally, defense counsel obtained admissions from Moore that she did not see Petitioner produce a lighter or matches from his pocket at the time of the incident, that she did not smell the lighter fluid that Petitioner sprayed on Ervin, and that Petitioner did not have physical contact with Shadron during the incident and that no lighter fluid was sprayed on Shadron.   T.T. 74-75. Further, in the course of his cross-examination, defense counsel employed a line of questioning that highlighted that Moore was "close friends with Miss Ervin and not so much with [Petitioner]" and that Moore and Ervin had discussed the events of July 7, 2008 before coming to court and testifying.   T.T. 74.   Accordingly, Petitioner's claim that he was deprived of the effective assistance of counsel on account of a conflict of interest is meritless. Consequently, this Court cannot find that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This claim is therefore denied.

## V.   Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     December 17, 2012
           Rochester, New York